IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 5, 2026 Session

## STATE OF TENNESSEE v. JEREMY BRIAN POE

**Appeal from the Circuit Court for Madison County**
**No. 24-485   Kyle C. Atkins, Judge**

_____

### No. W2025-01143-CCA-R3-CD

_____


A Madison County jury convicted the defendant, Jeremy Brian Poe, of one count of theft of property greater than $10,000, but less than $60,000.  On appeal, the defendant contends the evidence was insufficient to sustain his conviction, and the trial court erred in sentencing the defendant as a Range III offender.  Upon our review of the record, the parties' briefs, oral argument, and the applicable law, we affirm the defendant's conviction.  However, following our review of the defendant's sentence, we conclude the trial court erred in its application of Tennessee Code Annotated section  40-35-107(b) and in finding the defendant to be a Range III, persistent offender. Accordingly, the defendant's Range III sentence requires reversal, and we remand this matter for resentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part**

J. ROSS DYER, J., delivered the opinion of the court, in which TOM GREENHOLTZ, J., joined. JOHN W. CAMPBELL, SR., J., not participating.

Brennan M. Wingerter and Mitchell A. Raines, Tennessee District Public Defenders Conference – Appellate Division, Franklin, Tennessee, (on appeal) and Caroline Ballentine, Jackson, Tennessee, (at trial) for the appellant, Jeremy Brian Poe.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Jody Pickens, District Attorney General; and Katie Ferguson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

The defendant was indicted for theft of property valued over $10,000, but less than $60,000, by a Madison County grand jury in July 2024. Tenn. Code Ann. § 39-14-103. On April 25, 2025, the State presented the following proof at trial:

Andrew Taylor testified that on February 20, 2024, he drove to the Trinity Food Market[1] on North Parkway in Jackson, Tennessee. Upon arrival, he parked his 2022 Jeep Wrangler near the front door. Mr. Taylor went into the store, leaving the vehicle unlocked and running. After approximately two minutes, Mr. Taylor exited the store, noticed his Jeep was no longer where he had parked it, and then observed his Jeep "headed down Parkway."

Remembering he had left his cell phone in his Jeep, Mr. Taylor borrowed another customer's cell phone to call his nephew. According to Mr. Taylor, he and his nephew shared cell phone location data, and therefore, his nephew was able to track the movement of Mr. Taylor's phone and, by extension, his Jeep. Utilizing that data, Mr. Taylor tracked the location of his Jeep and relayed its location to law enforcement.

Investigator Bradley Lewis with the Jackson Police Department was on patrol when he received a call over the police radio concerning "a stolen vehicle at Trinity Food Market." Shortly after the initial call, dispatch provided a possible address for the stolen vehicle. Upon arriving at the location, which was located approximately three-quarters of a mile away from the Trinity Food Market, Inv. Lewis discovered the stolen Jeep parked behind a building. Inv. Lewis also observed the defendant "walking away from the vehicle." He ordered the defendant to stop and "get on the ground." However, the defendant refused the command and continued to walk away from Inv. Lewis and an accompanying officer. In response, Inv. Lewis ran towards the defendant, physically took the defendant into custody, and placed him under arrest. Pursuant to a search incident to the defendant's arrest, Inv. Lewis retrieved a cell phone from the defendant's pockets. Inv. Lewis testified that at no point did he notice any indications that the defendant was intoxicated.

Shortly after the vehicle was discovered, officers transported Mr. Taylor to its location. While there was no damage to the vehicle, Mr. Taylor noted several personal items were missing: a pair of gym shoes, approximately five to six hundred dollars, and his cell phone.[2] He estimated the value of his gym shoes to be approximately $80 - $90 and the value of his cell phone to be $1000. Mr. Taylor also testified that he had purchased the

---

[1] Trinity Food Market was also referred to as Trinity Mart during trial. For purposes of this opinion and for consistency, it will be referred to as Trinity Food Market.

[2] Ultimately, Mr. Taylor's cell phone was returned to him by the Jackson Police Department.

2022 Jeep Wrangler approximately four or five months prior to the theft.  He paid a down payment of $11,000 and owed $22,000 on the vehicle.

Investigator Wade Arnold with the Jackson Police Department also responded to the scene of the recovered vehicle.  After speaking with the other officers, Inv. Arnold transported the defendant to the police station in order to interview him.  After being advised of and waiving his *Miranda*[3] rights, the defendant gave the following signed statement:

> I left Northwest [Correctional Complex].  I had to walk five miles to get to – to get a check cashed. I had $175.  I went to McDonald's and a liquor store.  I was tired of walking.  I went to the gas station.  The vehicle was running.  I got in it, drove towards the bus stop, and left it behind the church.  I took the cellphone out of the car and a pair of shoes.  I wasn't trying to steal the car, just getting a ride to the bus stop.

During his interview with the defendant, Inv. Arnold did not notice any signs that the defendant was intoxicated.

At trial, the defendant testified that on the day in question he was attempting to travel to Chattanooga.  He stated that he possessed a bus ticket but "had to walk about, . . . eight miles, I guess, to cash a check."  On his way back to the bus stop, the defendant purchased a hamburger at McDonald's and a bottle of rum at a liquor store.  He went behind the liquor store and "drunk it, about every bit of it."  As he continued toward the bus stop, the defendant saw Mr. Taylor leave his Jeep running outside of the Trinity Food Market, so, "I just got in it" and "drove towards the bus stop."  The defendant testified that he did not intend to steal the Jeep but admitted to taking Mr. Taylor's gym shoes, cash, and cell phone.  The defendant claimed he was not thinking clearly that day due to drinking a "whole fifth of rum" and expressed remorse for his actions. However, on cross-examination, the defendant agreed that he took the Jeep without Mr. Taylor's permission because he "was just tired of walking."

Following deliberations, the jury found the defendant guilty of theft of property greater than $10,000, but less than $60,000.

A sentencing hearing was held on June 9, 2025.  At the onset of the hearing, the State introduced the defendant's presentence report.  To support its request to have the defendant classified as a Range III, persistent offender, the State introduced certified copies of five felony convictions:

---

[3] *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

1. Case No. 7991;  Offense Date 10/10/06;  Agg. Burglary - Count 1;  C Felony
2. Case No. 7991;  Offense Date 10/10/06;  Agg. Burglary - Count 2;  C Felony
3. Case No. 8667;  Offense Date 6/18/09;  Agg. Burglary;  C Felony
4. Case No. 9532;  Offense Date 4/8/13;  Agg. Burglary;  C Felony
5. Case No. 11144;  Offense Date 3/13/19;  Theft of Prop Value 2,500 – 10,000;  D Felony

The defendant noted that two of these convictions were for offenses of aggravated burglary committed within the same 24-hour period in 2006.  Therefore, the defendant argued, those convictions should merge and count as one for purposes of offender classification and render the defendant a Range II offender.  The State responded that Tennessee Code Annotated section 40-35-107(4) added an exception to the 24-hour rule for aggravated burglary in 2009, and that exception was in effect in 2024, when this offense occurred.  Ultimately, the trial court found that the defendant "would be sentenced based on the law as it was in existence at the time he committed this offense."  Accordingly, the trial court found the State had proven beyond a reasonable doubt that the defendant was a Range III offender.  The trial court then sentenced the defendant to twelve years in confinement with the Tennessee Department of Correction.

The defendant filed a motion for new trial.  After a hearing, the trial court denied the motion, and this timely appeal followed.

*Analysis*

On appeal, the defendant asserts the evidence presented at trial was insufficient to sustain his conviction because the State failed to prove that he had the requisite intent and that the vehicle had a value greater than $10,000; consequently, he argues the proof at trial was only sufficient to establish the offense of joyriding.  *See* Tenn. Code Ann. § 39-14-106.  The State responds that the jury could have reasonably concluded from several points of evidence that the defendant maintained the requisite intent to deprive the victim of his vehicle.  The State also argues the jury could have reasonably concluded the value of the vehicle was greater than $10,000.

Additionally, the defendant contends the trial court erred in classifying him as a Range III, Persistent offender, arguing his two aggravated burglary convictions in 2006 should have merged because they occurred in the same 24-hour period.  The State counters that the twenty-four-hour merger rule explicitly exempts aggravated burglary from merger, and thus, the trial court did not err in classifying the defendant as a Range III offender.

In the alternative, the defendant argues that a retroactive application of the 2009 amended twenty-four-hour merger rule which excludes aggravated burglary is an *ex post facto* application of law. The State responds that the defendant has waived that argument for failing to preserve it in the trial court.

Upon review, we agree with the State that the evidence was sufficient to sustain the defendant's conviction for theft of property valued over $10,000. However, we agree with the defendant that the trial court erred in classifying him as a Range III offender.

## I.    Sufficiency of Evidence

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *See id.* at 379. Circumstantial evidence alone may be sufficient to support a conviction. *State v. Richmond*, 7 S.W.3d 90, 91 (Tenn. Crim. App. 1999). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.* This Court will not exchange its "inferences for those drawn by the trier of fact from circumstantial evidence." *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

### i. *Intent to Permanently Deprive*

A person "commits theft of property if, with intent to deprive the owner of the property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). In addition, "'deprive' means to," as relevant to this case, "withhold property from the owner permanently or for such a period of time to substantially diminish the value or enjoyment of the property to the owner." *Id*. § 39-11-106(a)(9)(A). "The intent to deprive may be based solely upon circumstantial evidence, and a 'jury may infer a . . . defendant's intent from the surrounding facts and circumstances.'" *State v. Smith*, W2023-00482-CCA-R3-CD, 2024 WL 863301, at *6 (Tenn. Crim. App. Feb. 29, 2024) (quoting *State v. Stewart*, No. M2019-01421-CCA-R3-CD, 2020 WL 6494838, at *11 (Tenn. Crim. App. Nov. 5, 2020) (omission in original)). "Moreover, the fact that the [defendant] did not possess the owner's property for an extended period 'does not preclude a jury from finding that he possessed the requisite intent for theft.'" *Id.* (quoting *State v. Hicks*, No. W2022-00920-CCA-R3-CD, 2023 WL 4230430, at *4 (Tenn. Crim. App. June 28, 2023)).

After examining the evidence in the light most favorable to the State, we conclude the proof was sufficient for a rational jury to find beyond a reasonable doubt that the defendant possessed the requisite "intent to deprive" Mr. Taylor of his Jeep as defined in Tennessee Code Annotated section 39-11-106(a)(9)(A). The evidence produced at trial established that the defendant found the Jeep running outside of the Trinity Food Market. Because he was "tired of walking," the defendant took the Jeep without Mr. Taylor's permission, drove toward the bus stop, and concealed it behind a building. Shortly

- 6 -

thereafter, the Jeep and the defendant were quickly discovered. From these facts, when taken in the light most favorable to the State, it is reasonable for a jury to infer that the defendant had the intent to permanently deprive Mr. Taylor of his vehicle, but he was "captured too early in the criminal act." *State v. Reed,* No. M2020-00677-CCA-R3-CD, 2021 WL 4987974, at *2 (Tenn. Crim. App. Oct. 27, 2021). Accordingly, the evidence was sufficient to find the defendant possessed the requisite intent to deprive under Tennessee Code Annotated section 39-14-103(a) and, therefore, sufficient to sustain the jury's verdict.

The defendant argues that the evidence presented at trial only supports a conviction for "joyriding," in which the defendant need not have an intent to permanently deprive the victim of his property. Joyriding is defined as the taking of "another's automobile, . . . or another vehicle without the consent of the owner and the person does not have the intent to deprive the owner thereof." Tenn. Code Ann. § 39-14-106. In support of this argument, the defendant relies upon his own testimony that he "didn't intend to keep the car" and his statement to Inv. Arnold that he was "just getting a ride to the bus stop." However, this Court has recognized that the State is only required to prove beyond a reasonable doubt that the defendant intended to deprive the owner of the vehicle the moment he drove it away, not that the defendant intended to permanently possess it. *See Reed*, 2021 WL 4987974, at *2 (There is no requirement that a defendant deprive an owner of property for a prolonged period for the jury to find the defendant possessed the requisite intent for theft.); *see also State v. Smith*, No. W2023-00482-CCA-R3-CD, 2024 WL 863301, at *7 (Tenn. Crim. App. Feb. 29, 2024) (A jury can infer that a defendant was captured too early in the criminal act to accomplish a permanent deprivation.). Further, this Court has acknowledged that juries are not required to accredit a defendant's testimony that he did not intend to deprive the victim of their vehicle. *Reed*, 2021 WL 4987974, at *2.

Here, a reasonable juror could have concluded that when the defendant drove Mr. Taylor's vehicle away from the Trinity Food Market without his permission and concealed it behind a building, he had the intent to deprive Mr. Taylor of his vehicle. Moreover, the jury was within its discretion not to accredit the defendant's testimony to the contrary. Accordingly, the defendant is not entitled to relief.

### ii. *Value of the Vehicle*

Although the statute defining theft does not contain "an element regarding the value of the property stolen," the value "must be determined in order to establish the grade of the theft offense." *State v. Moats*, No. E2019-02244-CCA-R3-CD, 2020 WL 6392483, at *3 (Tenn. Crim. App. Nov. 2, 2020) (quoting *State v. Jones*, 589 S.W.3d 747, 756 (Tenn. 2019)); *see also State v. Sumpter*, No. W2021-00119-CCA-R3-CD, 2022 WL 946570, *11 (Tenn. Crim. App. March 30, 2022). "Whenever a determination of value is necessary to

assess the class of an offense in this code or the level of punishment, the determination of value shall be made by the trier of fact beyond a reasonable doubt." Tenn. Code Ann. § 39-11-115. Theft of property valued at greater than $10,000, but less than $60,000, is a Class C Felony. *See* Tenn. Code Ann. § 39-14-105(a)(4).

Tennessee Code Annotated section 39-11-106 defines "value" as "(i) [t]he fair market value of the property of service at the time and place of the offense; or (ii) [i]f the fair market value cannot be ascertained, the cost of replacing the property within a reasonable time after the offense[.]" Tenn. Code Ann. § 39-11-106(a)(39)(A). The fair market value of property is a question of fact for the jury. *State v. Stitts*, No. W2011-02673-CCA-R3-CD, 2013 WL 257069, at *5 (Tenn. Crim. App. Jan. 23, 2013). "The market value of the article stolen, and not its original cost, is the true criterion when it is necessary to establish the value of the property in order to fix the grade of the offense[.]" *Id.* (citing *State v. Hamm*, 611 S.W.2d 826, 829 (Tenn. 1981)). "This court has concluded that a property owner's testimony regarding value is sufficient, standing alone, to support a conviction for the theft of that value of property." *State v. Smith*, No. M2024-01108-CCA-R3-CD, 2026 WL 637323, at *14 (Tenn. Crim. App. Mar. 6, 2026). Additionally, the jury can use its "common sense" in making its determination regarding the value of stolen goods. *See State v. Sydnor*, No. M2007-02393-CCA-R3-CD, 2010 WL 366670 at *20 (Tenn. Crim. App. Feb. 2, 2010).

At trial, Mr. Taylor testified that he purchased the 2022 Jeep Wrangler for $33,000 four or five months prior to the theft. At the time of purchase, Mr. Taylor paid $11,000 as a down payment and still owed $22,000. The State also introduced a photograph of the Jeep reflecting the condition of the vehicle along with the victim's testimony that the Jeep had no damage prior to or after the theft. Additionally, the record clearly established that the Jeep was operable as Mr. Taylor drove to the gas station that day, the defendant was able to drive the vehicle from the station, and Mr. Taylor was able to drive it from the scene after the Jeep was located by law enforcement. Provided with the "purchase price, the condition of the vehicle, and length of ownership," a reasonable juror could have determined the value of the Jeep. *State v. Logue*, No. W1999-01795-CCA-R3-CD, 2000 WL 1843248, at *3 (Tenn. Crim. App. Dec. 15, 2000).

In addition, the defendant admitted to intentionally taking other items belonging to Mr. Taylor, estimated to be valued at approximately $1580 - $1690.[4] The jury, as the trier of fact, is entrusted with determining the value of the theft, the weight of the evidence, and evaluating the credibility of witnesses. Based on the verdict, the jury found the value of the vehicle, as well as Mr. Taylor's personal belongings and cash, to be greater than

---

[4] Specifically, Mr. Taylor testified that his gym shoes were valued at $80 - $90, his cell phone was valued at $1000, and the missing cash in the vehicle was approximately $500 - $600.

$10,000.  Accordingly, the evidence is sufficient to sustain the jury's verdict and the defendant, therefore, is not entitled to relief on this issue.

## II.     Offender Classification

The defendant argues the trial court erred in classifying him as a Range III, persistent offender.  Specifically, the defendant argues that the trial court erred in finding the State carried its burden in proving the defendant's convictions were sufficient to qualify as a Range III offender, arguing his two aggravated burglary convictions from 2006 should have merged for the purposes of classification.  The State insists the trial court properly interpreted the merger rule and, therefore, did not err in classifying the defendant as a Range III offender.  We agree with the defendant.

Initially, the parties question the appropriate standard by which this Court should review the trial court's determination of offender classification.  Recognizing there is a split of authority among this Court, the defendant urges this Court to review a trial court's range determination by conducting a de novo review with the presumption that the court's factual determinations are correct.  *See State v. Anderson*, No. E2024-01131-CCA-R3-CD, 2025 WL 2433781 (Tenn. Crim. App. Aug. 25, 2025), *perm. app. denied* (Tenn. Feb. 25, 2026 (citing *State v. Pearson*, 858 S.W.2d 879, 885 (Tenn. 1993)).  The State, however, insists that this Court should review a trial court's range determination decision for an abuse of discretion, with a presumption of reasonableness.  *State v. Garrens*, No. W2024-00258-CCA-R3-CD, 2025 WL 1307696, at *6 (Tenn. Crim. App. May 6, 2025) (quoting *State v. Christian*, No. M2018-00320-CCA-R3-CD, 2019 WL 3948933, at *5 (Tenn. Crim. App. Aug. 21, 2019)), *no perm. app. filed.*  Additionally, the State argues that this Court need not resolve the split in authority "because the defendant's argument fails under any standard."  While we agree with the State that resolution of the split of authority is not necessary to resolve the issue in this case, we disagree with the State's claim that the defendant cannot prevail.  Rather, upon our review of the record and the applicable law, the defendant prevails on his claim regardless of which standard we apply.

A Range III, persistent offender is defined as "a defendant who has received . . . [a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes, where applicable . . . ."  Tenn. Code Ann. § 40-35-107(a)(1).  A Range II, multiple offender, is a "defendant who has received a minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes[.]  Tenn. Code Ann. § 40-35-106(a)(1).  At the time of the defendant's 2006 convictions, the twenty-four-hour merger rule stated,

- 9 -

In determining the number of prior felony convictions a defendant has received[,] . . . [e]xcept for convictions for which the statutory elements include serious bodily injury, bodily injury, threatened serious bodily injury, or threatened bodily injury to the victim or victims, convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions[.]

*Id*. § 40-35-107(b)(4) (2005).

In 2009, the twenty-four-hour merger rule was amended to specifically exclude aggravated burglary. *Id*.; *see also* 2009 Tenn. Pub. Acts, ch. 603, § 1 (eff. July 1, 2009). The legislature made clear that aggravated burglaries "occurring on or after August 17, 2009, shall count as [separate] prior convictions for purposes enumerated in this act." *State v. Click*, No. E2015-01769-CCA-R3-CD, 2017 WL 1189750, at *16 (Tenn. Crim. App. Mar. 30, 2017), *abrogated on other grounds by State v. Patterson*, 564 S.W.3d 423 (Tenn. 2018); *see also* 2009 Tenn. Pub. Acts, ch. 603, § 4 (eff. July 1, 2009) ("This act shall take effect July 1, 2009, the public welfare requiring it and all convictions for the offense of aggravated burglary under Section 39-14-403, occurring on or after such date shall count as prior convictions for the purposes enumerated in this act."). The Compiler's Notes to the amended version of the statute make it clear that only aggravated burglaries "occurring on or after August 17, 2009, shall count as prior convictions for the purposes enumerated in this act." *Id*.; *see also State v. Kenneth Edward Watts*, No. E2010-00553-CCA-R3-CD, 2011 WL 5517000, at *6 (Tenn. Crim. App. Nov. 8, 2011) (noting this change to the twenty-four-hour merger rule). Therefore, although the legislature amended the twenty-four-hour merger rule to exclude aggravated burglary in 2009, the amendment only applies to convictions occurring after August 17, 2009.

In the case at bar, the defendant's 2006 aggravated burglary convictions occurred within the same twenty-four hours and before the 2009 amendment. Therefore, the defendant's 2006 convictions for aggravated burglary "constitute one (1) for purpose of determining prior convictions." Tenn. Code Ann. § 40-35-107(b)(4); *See State v. Borden*, No. W2021-00305-CCA-R3-CD, 2022 WL 839891, *4 (Tenn. Crim. App. Mar. 21, 2022); *see also State v. Gordon*, No. W2021-01190-CCA-R3-CD, 2023 WL 2375707, at *6 fn.2 (Tenn. Crim. App. Mar. 7, 2023). As such, the record only establishes four prior felony convictions that may be counted in the offender classification. Accordingly, the trial court erred in classifying the defendant as a Range III offender, and we remand for resentencing the defendant as a Range II offender.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the defendant's conviction for theft of property valued greater than $10,000, but less than $60,000. We reverse the trial court's sentencing of the defendant as a Range III offender and remand for resentencing of the defendant as a Range II offender.


s/ *J. ROSS DYER*  _
J. ROSS DYER, JUDGE